IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. JUNG HA KIM, *et al.*, | * | |
| | * | |
| Relators, | * | |
| vs. | * | CASE NO. 3:23-CV-54 (CDL) |
| CENTER FOR PAN ASIAN COMMUNITY SERVICES, INC., *et al.*, | * | |
| Defendants. | * | |

O R D E R

Relators brought this qui tam action under the False Claims Act, alleging that the Center for Pan Asian Community Services, Inc. and its former chief executive officer Chaiwon Kim, along with twelve current and former board members, defrauded the United States by submitting false certifications in connection with federal grants. Relators are former senior managers of the Center who claim that the Center misappropriated federal grant funds and then terminated Relators for investigating and complaining about the misappropriation. Relators further assert that Chaiwon Kim and the Center's board members conspired to submit false claims. Defendants filed a motion to dismiss all of Relators' claims. For the reasons set forth below, the Court denies that motion (ECF No. 57) except as to Wat Sintharattana's retaliation claim. That claim is dismissed.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

In a False Claims Act case like this one, a relator "must clear a high pleading bar" in addition to the general pleading rules. *Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1157 (11th Cir. 2025). "That bar comes from Federal Rule of Civil Procedure 9(b), which provides that a party alleging fraud 'must state with particularity the circumstances constituting fraud or mistake.'" *Id.* A False Claims Act "complaint must spell out the fraud in detail—what happened, who did it, when and where it occurred, and

how it amounted to fraud." *Id.* And because the False Claims Act "targets false claims" and "not regulatory violations," "internal misconduct," or "abstract theories untethered from government payment," a relator must allege "the submission of a claim." *Id.* In summary, to state a viable claim under the False Claims Act, "a relator must allege not just a scheme, but a scheme that actually led to false claims being submitted to the government—and he must do so with particularity." *Id.* "The most direct way to satisfy that requirement is by identifying specific claims submitted to the government: invoices, billing records, reimbursement forms." *Id.* "But Rule 9(b) does not always require documentary proof at the pleading stage." *Id.* Instead, a "relator can satisfy the rule by other means—so long as he still pleads the submission of a claim with 'sufficient indicia of reliability.'" *Id.* (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006)).

FACTUAL ALLEGATIONS

Relators make the following factual allegations, which the Court accepts as true for purposes of this order.

The Center for Pan Asian Community Services, Inc. is a nonprofit organization that provides social and health services to under-served communities. Relators were senior managers at the Center until the summer of 2022, and Relator Jung Ha Kim served as the Center's chief executive officer from July 2021 until August

2022. Defendant Chaiwon Kim preceded Jung Ha Kim as the Center's CEO. The other Defendants are current or former board members of the Center.

The United States Health Resources and Services Administration ("HRSA") is a federal agency within the U.S. Department of Health and Human Services. HRSA awards federal grants for community-based health care programs. Recipients of these grants must comply with federal regulations on reporting, certify that any expenditure of grant funds complies with the terms of the grant, and disclose in writing any potential conflicts of interest. Relators assert that the Center was awarded forty-four HRSA grants with grant periods between 2013 and 2024. Am. Compl. ¶ 43, ECF No. 56 (providing chart of grant names, grant numbers, award amounts, and grant periods). Each time the Center applied for and was awarded federal funds, it certified that it would comply with the federal regulations and grant requirements.

Relators allege that the grant funds were misappropriated in the following ways:

1. On June 19, 2021, Chaiwon Kim directed the Center to enter a commercial lease agreement with Bogo World LLC, a company that belongs to Center board member Michelle Ferreyra.[1] Under the lease terms, the Center was to pay Bogo World LLC $5,870.25 per month, an amount that exceeded fair market value. The lease agreement did not go through proper procurement procedures, and the conflict of interest

[1] The complaint names "Michelle Ferreyra" as a Defendant and Center board member. The Court uses this spelling in the order but notes that the complaint also refers to a board member named "Michell Kim Ferrarya," which the Court assumes is the same person.

was not disclosed to HRSA in writing as required by the regulations. On December 1, 2021, Chaiwon Kim signed a check on behalf of the Center for a lease payment to Bogo World LLC for $5,870.25. The lease payment was made with federal grant funds. *Id.* at ¶¶ 44-50.

2. Chaiwon Kim and her husband, Kim Sun Hee, owned three commercial buildings that they leased to the Center. The conflict of interest was not disclosed to HRSA in writing as required by the regulations. In 2016, Chaiwon Kim authorized a payment of $480,000 in federal grant funds to renovate one of her commercial properties that she leased to the Center. In 2020, Chaiwon Kim authorized a payment of $400,000 in federal grant funds to renovate one of her commercial properties that she leased to the Center. In 2022, Chaiwon Kim authorized a payment of $500,000 in federal grant funds to renovate one of her commercial properties that she leased to the Center. *Id.* ¶¶ 53-60.

3. In 2019 and 2020, the Center used funds it received under Health Center Program Grant # H8026591 to purchase six vehicles. The vehicles were supposed to be used to transport patients to receive healthcare services, but the Center gave the vehicles to a hot meal delivery program that was outside the scope of the HRSA grant award. *Id.* ¶¶ 63-65.

Relators further allege that Chaiwon Kim, acting for the Center, certified to HRSA in connection with each grant (including in the grant applications, progress reports, financial reports, compliance certifications, and drawdown documents) that the Center would comply with all applicable federal statutes, regulations, terms, and conditions. Relators also assert that when Chaiwon Kim made these certifications on behalf of the Center, she knew that the certifications were false because she knew that the Center would use the funds to lease a board member’s property without disclosing the conflict, to lease her own property without disclosing the conflict, to renovate her own property without

disclosing the conflict, or for purposes that were outside the grant's scope. *Id.* ¶¶ 66-71. Finally, Relators allege that the Center's certifications were material to the Government's decision to approve the grants because HRSA would not have approved or paid the same awards had it known that the funds would be used for non-grant purposes or for purposes that violated conflict-of-interest rules. *Id.* ¶ 72.

Relators, who held senior executive and management positions at the Center, discovered the alleged False Claims Act violations outlined above. On February 21, 2022, Relators made a formal presentation to the Center's board of directors and explained how the Center's actions may violate federal law. At Relators' request, the board hired outside counsel to review the allegations. The outside investigation substantiated Relators' allegations, but in the months after the investigation the Center terminated all Relators (except Wat Sintharattana) "because they raised concerns about federal grant misuse and cooperated with outside investigators." *Id.* ¶ 80.

Relators brought four claims under the False Claims Act: Count I – Presentment of False Claims against the Center and Chaiwon Kim under 31 U.S.C. § 3729(a)(1)(A); Count II – False Statements/Records against the Center and Chaiwon Kim under 31 U.S.C. § 3729(a)(1)(B), Count III – Conspiracy against all

Defendants under 31 U.S.C. § 3729(a)(1)(C), and Count IV – Retaliation against the Center under 31 U.S.C. § 3730(h).

DISCUSSION

**I. Counts I and II: False Presentment and False Statement Claims**

The False Claims Act targets fraud in federal programs. It imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). It also imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). As explained above, the submission of a false claim is "the *sine qua non* of a False Claims Act violation." *Vargas*, 134 F.4th at 1157 (quoting *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). A False Claims Act relator cannot merely "describe a private scheme in detail" and then "allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311. Instead, the relator must allege facts "to support the allegation of an actual false claim for payment being made to the Government" and there must be "some indicia of reliability" for those facts. *Id.*

Defendants argue that Relators fail to state a claim under the False Claims Act because they did not adequately allege that any Defendant made a false claim to the Government or make a false statement material to a false claim. Defendants rely primarily on two cases: *Clausen v. LabCorp* and *Corsello v. Lincare, Inc.* In *Clausen*, the relator alleged that the defendant had a scheme to perform unnecessary testing on Medicare patients and bill the Government for those tests. *Clausen*, 290 F.3d at 1304-05. The problem with his claim was that he did not present "copies of a single actual bill or claim or payment," did not allege any "actual dates of claims," and did not describe "even second-hand information about billing practices." *Id.*at 1306. "Basically, [the relator] did not add any billing information to support his allegation that actual false claims were submitted for payment, such as the amount of any charges. Instead he attached one blank claim form and alleged that certain tests would have been billed on this form with certain test and diagnostic codes filled in." *Id.* That was not enough. Similarly, in *Corsello v. Lincare, Inc.*, the relator made vague allegations of improper practices and "failed to provide a factual basis to conclude fraudulent claims were ever actually submitted to the government." 428 F.3d 1008, 1013 (11th Cir. 2005).

Here, in contrast, Relators allege that the Center applied for federal HRSA grants seeking federal funds for the Center's

programs. They allege that the Center, in its grant applications and related required documentation, represented that it would use the funds for grant purposes and that the Center complied with regulations, including the conflict-of-interest rules. Relators assert that those representations were false and that Chaiwon Kim knew that they were false when they were made. Relators allege that HRSA awarded forty-four specific grants to the Center based on those misleading grant applications and disbursed funds to the Center under those grants. And Relators assert that Chaiwon Kim directed the Center to use the grant funds for purposes that were not permitted under the grants or to make payments to interested parties whose conflicts of interest had not been disclosed to HRSA. Relators alleged specific payments and transactions that violated the terms of the grants or the conflict-of-interest rules. Finally, Relators contend that their allegations are reliable because they learned about the grant applications, the documentation, the misrepresentations in the applications and documentation, and how the grant funds were used because they were employees of the Center during at least part of the relevant timeframe.

Defendants contend that these allegations are not enough because Relators did not identify a specific grant drawdown request or payment submission. Although the "most direct way to satisfy" the false claim "requirement is by identifying specific claims

submitted to the government: invoices, billing records, reimbursement forms," that is not the only way. *Vargas v. Lincare, Inc.*, 134 F.4th 1150, 1157 (11th Cir. 2025). "Rule 9(b) does not always require documentary proof at the pleading stage"—a relator can satisfy the rule by other means if he "pleads the submission of a claim with 'sufficient indicia of reliability.'" *Id.* Such indicia may include a relator's first-hand knowledge of the defendant's billing practices or a relator's description of specific observations that support the relator's belief that the defendant submitted false claims. *Id.* Here, Relators allege facts to suggest that Chaiwon Kim and the Center asked the Government for money by applying for grants, made material misrepresentations in the grant documentation, obtained money from the Government based on the misleading grant applications, and used that money for impermissible purposes. Relators made these allegations based on information they learned while working for the Center, and they listed specific grants whose funds were allegedly misappropriated. The Court is satisfied that Relators sufficiently alleged that Chaiwon Kim and the Center submitted false claims to the Government. Accordingly, the Court denies Defendants' motion to dismiss Counts I and II.

## II. Count III: Conspiracy Claim

In Count III, Relators allege that Chaiwon Kim, acting on behalf of the Center, conspired with all the other Defendants to

submit false claims to the Government. The False Claims Act does impose liability on any person who "conspires to commit a violation" of the Act. 31 U.S.C. § 3729(a)(1)(C). To state a False Claims Act conspiracy claim, a relator "must show '(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim.'" *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1319 (11th Cir. 2024) (quoting *Corsello*, 428 F.3d at 1014). As with other False Claims Act claims, "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Id.* (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)) (alteration in original).

Here, Relators allege that Aisah Gayle, Salai Thang, Michelle Ferreyra, Josue Rosales, Nguyen H. Tu, Norma Zuniga-Cardoza, Jess Villegas, Brian O. Williams, Patrick Dierberger, Keegan Leiba, Bikash Chhetri, and Misoon Lee were members of the Center's board of directors. Relators further allege that these board member Defendants formed an agreement with Chaiwon Kim to cause the Center to make and use false statements and records material to the payment of HRSA grant funds. According to Relators, the board

member Defendants knew about the leases and renovations that violated conflict-of-interest rules, but the board member Defendants approved, authorized, or concealed the transactions and approved the submission of grant applications and grant documentation that falsely certified compliance with federal rules. Relators also contend that the board member Defendants knew about and authorized the use of grant-funded equipment for non-grant purposes. The Court finds that these allegations are enough to state a False Claims Act conspiracy claim against the board member Defendants. The Court thus denies Defendants' motion to dismiss the conspiracy claim.

**III. Count IV: Retaliation Claim**

Relators' final claim is for retaliation. The False Claims Act prohibits retaliation against an employee "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). "If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee," and then the employee was discharged because of those actions, "then the complaint states a claim for retaliatory discharge under § 3730(h)." *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010) (per curiam).

Here, Defendants contend that Relators did not sufficiently allege that they engaged in protected activity or that they suffered an adverse employment action because of their actions. Relators allege that they all participated in a formal presentation to the Center's board asserting that the Center had been misappropriating federal grant funds and needed to stop. They explained how the Center's actions may violate federal law. Relators further allege that they participated in an outside investigation of the alleged violations and that they were all fired (except Wat Sintharattana) because they raised concerns about misappropriation of federal funds and tried to halt the violations. These allegations are sufficient to state a False Claims Act retaliatory discharge claim for all Relators except Sintharattana, and Defendants' motion to dismiss those claims is denied.

Relators summarily allege that Sintharattana resigned from his position at the Center "due to intolerable working condition." Am. Compl. ¶ 4. There are no facts to support this assertion—nothing to create an inference that Sintharattana was discriminated against in the terms and conditions of his employment because of protected activity. Accordingly, Sintharattana fails to state a claim for retaliatory discharge, and that claim is dismissed.

CONCLUSION

For the reasons explained above, the Court denies Defendants' motion to dismiss (ECF No. 57) except as to Wat Sintharattana's retaliation claim. That claim is dismissed.

IT IS SO ORDERED, this 29th day of September, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA